USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/11/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

G&G CLOSED CIRCUIT EVENTS, LLC,

                    Plaintiff,

         v.

MANUEL SANCHEZ TORRES, *individually and d/b/a* MI LUGAR RESTAURANT *d/b/a* EL REY DEL TACO *a/k/a* LA ESQUINITA; and MI LUGAR RESTAURANT CORP., *an unknown business entity d/b/a* MI LUGAR RESTAURANT *d/b/a* EL REY DEL TACO *a/k/a* LA ESQUINITA,

                    Defendants.

No. 20-CV-3487 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff G&G Closed Circuit Events, LLC purchased an exclusive license to commercially broadcast within the United States a May 6, 2017 boxing match. Plaintiff alleges that Defendants, without authorization, intercepted and exhibited that match to its patrons at El Rey Del Taco a/k/a La Esquinita ("El Rey del Taco"), a restaurant in New Rochelle NY, in violation of federal law. Defendants have not appeared in this action, and Plaintiff moves for a default judgment. Plaintiff's motion is granted.

## BACKGROUND

### I. Procedural History

    Plaintiff initiated this action on May 5, 2020. Defendant Mi Lugar Restaurant Corp. was served with the Summons and Complaint on June 2, 2020 by its authorized agent in the office of the New York State Secretary of State. Dkt. 10. Defendant Manuel Sanchez Torres was served on July 1, 2020 by his co-worker on the premises of El Rey del Taco. Dkt. 11. On July 27, the Clerk of Court

entered certificates of default against both Defendants. Dkt. 17, 18. Plaintiffs filed the instant motion on August 18, 2020. Dkt. 22 ("Pl. Mot."). On August 20, 2020 the Court issued an order indicating that it would resolve this matter without a hearing in light of the COVID-19 pandemic. Dkt. 29. Both Defendants were served with Plaintiff's motion papers and the Court's order on August 28, 2020. Dkt. 30. Defendants have not responded to Plaintiff's motion or otherwise appeared in this action.

## II.     Facts[1]

Plaintiff G&G Closed Circuit Events, LLC is a California corporation that distributes sports and entertainment programming. Pl. Mot. at 1; Compl. ¶ 6. On March 28, 2017, Plaintiff purchased "the exclusive nationwide commercial distribution (closed-circuit) rights to Saul Alvarez v. Julio Cesar Chavez, Jr. Super Middleweight Championship Fight Program . . . including undercard or preliminary bouts" (the "Program") at commercial establishments, including restaurants, "throughout New York and other locales." Compl. ¶ 19; *id.*, Ex. A. The Program, which "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal," was broadcast nationwide on May 6, 2017. *Id.* ¶¶ 19, 24. Because the transmission of the Program was electronically "scrambled," viewers seeking to access the content required either electronic decoding equipment or authorization from their satellite or cable provider. *Id.* ¶ 25. In other words, commercial establishments in New York could broadcast the Program only with explicit authorization from Plaintiff. *Id.* ¶ 21.

Defendant Mi Lugar Restaurant Corp. is a New York corporation that owns and operates El Rey del Taco in New Rochelle, New York. Compl. ¶¶ 7-10. On May 6, 2017, El Rey del Taco

---

[1] The following facts are drawn from the Complaint, and assumed to be true for purposes of this motion for default judgment. *See, e.g., Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

broadcast the Program on two screens to approximately 25 patrons, while selling alcoholic and non-alcoholic beverages. *Id*. ¶¶ 26-27. Plaintiff also alleges that Sanchez Torres, as "Owner and Principal of Mi Lugar Rest[]aurant Corp.," had "the right and ability to supervise the activities" of the restaurant on the night the Program was shown, "specifically directed the employees [of the restaurant] to unlawfully intercept, receive and broadcast" the Program, and had "an obvious and direct financial interest" in the unlawful showing of the fight. *Id.* ¶¶ 9, 12-15. Defendants did not pay Plaintiff the $2,200 sublicense fee required of a commercial establishment of El Rey del Taco's size. *Id.* ¶ 28; *see also* Affidavit of Nicholas J. Gagliardi ¶ 9, Dkt. 24 (declaring that the amount of license fee is set "based on the capacity of the establishment"). Although the Complaint does not specify the means by which Defendants "intentionally intercepted, and/or published" the Program, Plaintiff declares that commercial entities pirating signals typically use an illegal unencryption device such as a "blackbox" or "smartcard," or misrepresent themselves as residential properties. *See id.*

## DISCUSSION

### I.  Liability

"[T]he court may . . . enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "[A] default is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

Plaintiff seeks a default judgment with respect to causes of action under the Communications Act of 1934, 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553. Accepting as true the allegations in the Complaint, the Court concludes that Plaintiff has established Defendants' liability on both counts.

Both statutes prohibit the conduct alleged here, the unauthorized reception of cable programming. Although Section 605(a) of the Communications Act of 1934, as amended, expressly prohibits only the interception of "radio communications," courts within the Second Circuit have long applied the law to satellite communications. *See, e.g.*, *Kingvision Pay-Per-View Ltd. v. Villalobos*, 554 F. Supp. 2d 375, 381 (E.D.N.Y. 2008); *CSC Holdings, Inc. v. Alberto*, 379 F. Supp. 2d 490, 494 (S.D.N.Y. 2005); *DirecTV v. Deskin,* 363 F. Supp. 2d 254, 257 (D. Conn. 2005); *see also Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996) ("*Sykes II*") (citing legislative history indicating that the act was intended to prohibit "communications transmitted by means of new technologies," including the "unauthorized reception of subscription television . . . and satellite communications" (internal quotation marks omitted)). Section 553(a)(1), by contrast, applies only to the unauthorized interception of transmissions "offered over a cable system." 47 U.S.C. § 553(a)(1). Where, as here, the intercepted program is transmitted via cable and satellite, sections 553 and 605 both apply.

The allegations in the Complaint—that Defendants intercepted and broadcast a boxing match that was broadcast on satellite and cable without prior authorization from the holder of the exclusive license for commercial distribution in the United States—suffice to establish liability under both sections.

**II.    Damages**

Plaintiff seeks an $6,600 in statutory damages and an additional $19,800 in enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Although a "'party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc*., 699 F.3d 230, 234

(2d Cir. 2012) (*quoting Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty* Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).

Where a defendant is liable under both Sections 553 and 605, the Second Circuit has instructed courts to grant damages according to the more generous formula set forth in Section 605. *See Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993) ("*Sykes I*"). Pursuant to that statute, the aggrieved party may opt to recover either actual or statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C). "In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." *Id.* § 605(e)(3)(C)(ii).

Courts in this District generally measure statutory damages under Section 605 based "on the greater of two numbers: the flat fee that Plaintiff would have charged Defendants to air the programming at their establishment or the sum of what each individual who viewed the event at Defendants' establishment would have paid to view it at home." *J & J Sports Prods., Inc. v. Sugar Cafe Inc.*, No. 17-CV-5350 (RA), 2018 WL 324266, at *1 (S.D.N.Y. Jan. 5, 2018). Plaintiff argues that this method of calculation undervalues the Program and fails to sufficiently disincentivize violations of the law. *See* Pl. Mot. at 6-8. Although the Court appreciates Plaintiff's concerns and the importance of deterring signal piracy, the availability of enhanced statutory damages in this case counsels against any deviation from the established formula. Because Plaintiff has not submitted any

Case 1:20-cv-03487-RA   Document 33   Filed 01/11/21   Page 6 of 7

evidence as to the price an individual would have paid to view the event, the Court will award statutory damages in the amount of the license fee, which Plaintiff avers is $2,200.  *See* Compl. ¶ 28.

With respect to enhanced statutory damages, defendants have acted willfully within the meaning of 47 U.S.C. § 605 if they "took an affirmative action to illegally intercept" the broadcast. *Kingvision Pay-Per-View, Ltd. v. Recio*, No. 02 CIV. 6583(JSM)RLE, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003).  "An award of enhanced damages ensures that a willful defendant's profits are disgorged and aims to deter similar acts of cable piracy in the future." *Sugar Cafe Inc.*, 2018 WL 324266, at *2 (internal quotation marks omitted).

An enhanced damages award is appropriate here because Plaintiff has shown that Defendants' violation was both willful and "for purposes of direct or indirect commercial advantage." 47 U.S.C. § 605(e)(3)(C)(ii); *see Sugar Cafe Inc.*, 2018 WL 324266, at *2.  The Complaint and the affidavits filed in support of Plaintiff's motion for default judgment adequately establish that El Rey Del Taco hosted, and profited from, an unlicensed showing of the Program.  Plaintiff has also demonstrated that El Rey del Taco could not have involuntarily intercepted and exhibited the event because the transmission "had to be decoded with electronic decoding equipment" in order "for the signal to be received and telecast clearly." Compl. ¶ 23.

Accordingly, the Court finds that award of $8,800 in enhanced damages is appropriate.  This Court has previously awarded enhanced damages at four times the base award under similar circumstances. *See Sugar Cafe Inc.,* 2018 WL 324266, at *2 (awarding $8,000 in damages against Defendant restaurant that broadcast unlicensed boxing match to 22 people).  The enhanced award in the amount of $8,800 is also "consistent with other awards in this Circuit for comparable infractions." *J & J Sports Prods., Inc. v. Kosoria*, No. 06-CV-2102 (KMK), 2007 WL 1599168, at *5 (S.D.N.Y. June 1, 2007) (awarding $7,500 in enhanced damages) (gathering cases); s*ee also Kingvision Pay-*

*Per-View Ltd. v. Cardona*, No. 03-CV-3839 (GBD) (FM), 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) (finding that $10,000 in enhanced damages, which was five times the base damages award, was appropriate as the amount necessary to "send the message that cable piracy is impermissible").

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is granted. Plaintiff is awarded $10,800 in statutory damages. Defendants are jointly and severally liable for that amount. As requested, Plaintiff is hereby granted 30 days from the entry of judgment to submit its motion for costs and attorneys' fees. The Clerk of Court is respectfully directed to enter judgment and to close the case. All motions are terminated.

SO ORDERED.

Dated:   January 11, 2021
         New York, New York

                                              Ronnie Abrams
                                              United States District Judge